UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

EDWARD P. MCEVOY,

    Plaintiff,

v.

RICHARD V. SPENCER,

    Defendant.

CASE NO. C16-5672 BHS

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

This matter comes before the Court on the motion for summary judgment of Defendant Richard Spencer, Secretary of the United States Navy ("Defendant"), Dkt. 12, and Plaintiff Edward McEvoy's ("McEvoy") motion for partial summary judgment, Dkt. 15. The Court has considered the pleadings filed in support of and in opposition to the motions and the remainder of the file and hereby rules as follows:

## I. PROCEDURAL HISTORY

On August 1, 2016, McEvoy filed a complaint against Defendant asserting claims for unlawful retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e–3(a) and Title II of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12132, denial of reasonable

accommodations in violation of the ADA, violation of the First Amendment, violation of the Fifth Amendment, and breach of a settlement agreement. Dkt. 1.

On November 21, 2017, Defendant filed a motion for summary judgment on all of McEvoy's claims. Dkt. 15. On November 29, 2017, McEvoy filed a 53-page motion for partial summary judgment on liability for his retaliation claims. Dkt. 15.

On December 15, 2017, Defendant filed a reply to its motion noting that McEvoy failed to respond to the motion. Dkt. 20. On December 18, 2017, McEvoy filed a 28-page untimely response. Dkt. 22. On December 19, 2017, McEvoy filed a second untimely response. Dkt. 24. Later that day, Defendant filed a surreply requesting that the Court strike McEvoy's untimely responses. Dkt. 26. On December 21, 2017, McEvoy's attorney filed a declaration asserting that the untimely filing was due to a calendaring error in his office and requesting that the Court accept the late responses. Dkt. 27.

On December 26, 2017, Defendant responded to McEvoy's motion. Dkt. 28. On December 28, 2017, McEvoy replied and submitted additional evidence in support of his motion. Dkts. 29, 30.

## II. FACTUAL BACKGROUND

The Navy hired McEvoy in December 2005 as a Work Control Assistant at the Naval Facilities Engineering Command, Northwest, ("NAVFAC NW"), in the Public Works Department ("PWD"). Dkt. 13-1 at 33–34. The mission of the PWD is facility maintenance, repair, construction, and engineering services for all military tenants located on the Naval Base Kitsap ("NBK") in Kitsap County, Washington, which includes Naval Base Kitsap Bangor ("NBK Bangor"), Naval Base Kitsap Bremerton

("NBK Bremerton"), and Naval Base Kitsap, Keyport. Initially, McEvoy worked in NBK Bremerton. *Id*. at 33.

Problems arose almost immediately. In 2006, one of McEvoy's supervisors, Robert Fojtik, terminated McEvoy for performance reasons. Dkt. 15 at 2. McEvoy filed a complaint with the Equal Employment Opportunity ("EEO") office. The parties resolved the complaint with a settlement resulting in Defendant reinstating McEvoy. This pattern continued over the next eight years with McEvoy filing "between 10 and 14 EEO complaints, alleging that he was being subjected to discrimination and retaliatory harassment because of his EEO activity." Dkt. 15 at 11.

On August 13, 2014, the parties entered into another settlement agreement to resolve three pending EEO complaints. Dkt. 1-1. Under the terms of the agreement, McEvoy's 14-day suspension was reduced to ten working days, and the temporary detail at Bangor was extended until he was permanently reassigned on April 19, 2015. *Id*. After his reassignment, Joshua Bass ("Bass") became McEvoy's first-level supervisor and Lieutenant Commander ("LCDR") Ross Pitcairn became McEvoy's second-level supervisor. Dkt. 13-9 at 2–3. The Navy intended the move to provide McEvoy with a "fresh start." Dkt. 13-2 at 19–20.

On September 16, 2014, McEvoy's temporary supervisor, Commander Michael Leonard, placed the new suspension notice on McEvoy's work chair, with a red folder. McEvoy filed an EEO complaint alleging that this was retaliatory.

In November of 2014, Defendant appointed Glen Miller to investigate McEvoy's claims of retaliation from his previous chain of command. McEvoy refused to participate

in the investigation and asserted that continuing the investigation after the settlement was retaliatory. McEvoy filed another EEO complaint based on this alleged retaliation.

In January of 2015, McEvoy and thirteen other employees sent a letter to Senator Patty Murry detailing alleged retaliation and discrimination on the Naval Base. Senator Murray sent a letter to the Navy requesting a response. On March 12, 2015, the Navy responded assuring Senator Murray that all employees had access to numerous administrative agencies to address and investigate any retaliation or discrimination. Dkt. 15-6.

In May 2015, McEvoy posted numerous comments about the Navy on his social media accounts. For example, McEvoy asserted that he and his coworkers were experiencing constant discrimination and retaliation, that his commanders were part of the "biggest mafia in the world," and that they even had tried to kill him. Dkt. 13-5 at 36, 38, 40.

In late May 2015, McEvoy had an anxiety attack at work. Bass refused to allow McEvoy to go to the base infirmary under the mistaken assumption that the infirmary was only for active duty personnel on the base. McEvoy left work, went straight to his doctor, and then returned to work on June 8, 2015. When McEvoy returned to work, Bass delivered a letter of reprimand to McEvoy for leaving the base without permission from his supervisor.

On August 5, 2015, LCDR Pitcairn issued McEvoy a proposed removal. Dkt. 13-5 at 8–15. The notice was based on one charge of disrespectful conduct with five specifications, which are separate incidents. *Id*. On August 28, 2015, McEvoy

responded arguing that the allegations violated his constitutional rights, federal laws, and amounted to unlawful retaliation for his numerous EEO complaints. Dkt. 15-2 at 2–7. On September 9, 2015, LCDR Pitcairn issued a new proposed removal, which rescinded the original notice. Dkt. 13-5 at 2–7. The notice included one charge of unacceptable conduct with eight specifications and one charge of insolent language with six specifications. *Id*. In relevant part, the notice provides as follows:

> **Charge I:** Unacceptable Conduct
>
> **Specification 1:** On Monday, 08 June 2015, at building 1101, NA VF AC NW, Bangor, WA, you were directed by two female Navy Region Northwest Master at Arms (MAAs) to present your Common Access Card (CAC) and your bag for random inspection. After being told by the MAA's that they were conducting a Random Anti-Terrorism Measure (RAM) directed by the Naval Base Kitsap Commanding Officer, you demanded to know what their probable cause was; moved into their personal space, hovering over their clipboard with your arms crossed; stated "make it quick, I have a meeting in three (3) mikes, I don't have time for rookies"; stated that you were "doing their jobs since before they were born" and not to tell you "how to do your job," or words to that effect; and when the random inspection was completed stated to MA2 Walz "good girl."
>
> **Specification 2:** On 7 May 2015 you utilized the social media account Twitter and made the following statement concerning NAVFAC NW employee Lisa Evans: "NAVFAC NW Legal L. Evans & PRI/ATT. C. Johnson illegal deals behind clients back." At the time, Lisa Evans was employed at NA VFAC NW in the Office of Counsel.
>
> **Specification 3:** On 7 May 2015 you utilized the social media account Twitter and made the following statements concerning NAVFAC NW: "NAVFAC NW CMD/UNION/HRJEEO all corrupt in my experience and opinion. Fed Employees & Veterans being discriminated/retaliated & WA. DC condones."
>
> **Specification 4:** On 7 May 2015 you utilized the social media account Twitter and made the following statements concerning NAVFAC NW: "Anyone surprised? Veterans being discriminated from NAVFAC NW, and GOV. ignores our pleas for help. Corruption HI!!."

**Specification 5:** On 24 May 2015 you utilized the social media account Facebook and posted statements concerning NAVFAC NW. stating in part: "… the Civilian/Navy NAVFAC NW /Shipyard NAVAL Officers are attacking us . . . these Navy Officers, and civilian Human Resources/EEO counselors and the Union are all Corrupt, and in collusion with each other to harm us, and fire us. It's getting this crazy. I have heard the same thing happened to a Civil service worker who was abused so bad he came back and shot up the Naval Shipyard in Washington D.C . . . you don't know who will crack under this NAVY 'ABUSE OF AUTHORITY.'"

**Specification 6:** Between 26 May 2015 and 28 May 20 J 5, you utilized the social .media account Facebook and posted statements concerning NAVFAC NW stating in part: ". . . I will die fight (sic) for our rights . . . We are fighting the biggest mafia in the world. My own Government . . . had several formal discrimination charges against my Naval Command, & coincidently was about to receive a decision, & all of a sudden I was involved in. A hit and run where someone attempting to kill me ... our local NAVFAC NW NAVY may have attempted to take me out of the picture . . . I'm living proof of the threats & others have had their lives threatened . . . The Government NAVFAC NW may have attempted murder to me."

**Specification 7:** On 18 June 2015, you spoke at a public forum sponsored by the Kitsap Chapter of Blacks in Government. The forum was held at the Norm Dicks Government Center in Bremerton WA. In the presence of approximately twenty-five (25) people you identified that you currently work for Naval Facilities Engineering Command and stated in part: ". . . I don't believe in coincidences, however, I was leaving a gentlemen's, he's sitting in the audience; house, on my new motorcycle and was involved in a hit and run. I almost died; was in critical condition. Two days after that those 2 EEOs formals–that were completely investigated–were dismissed by summary judgment. I'm not sure of the details of what that means but like I said, I don't believe in coincidences. It's been said to me that but it didn't cross my mind until it was brought to my attention that some people said that, because I was rocking the boat, in layman's terms per se at such a high level . . . all the way to Washington DC . . . some people suggested that they were . . . trying to take me out. I didn't want to believe that but the reality of it is, it may exist. I'm still here; I'm still filing." This event was recorded by Bremerton Kitsap Access Television (BKAT), available for download on the BKAT's website for several days and was aired on public television on BKAT'S channel on Friday, 26 June and Sunday, 05 July 2015.

**Specification 8:** The morning of 26 June 2015, your supervisor, Josh Bass, was having a discussion with you regarding your efforts to overcome obstacles to completing some job tasks. You explained why you had been having some computer issues. The conversation was professional and civil, and then you stated "I know people are worried about how I react to different things, but I'm not an engineer like Timothy McVeigh who blew up the Federal Building in Oklahoma City." This was not relevant to the discussion. Your supervisor was surprised at this topic and you followed on by saying something like: "What I'm saying is that I'd be more concerned with engineers who can think like McVeigh, as opposed to someone like me who just has a background in math."

**Charge II:** Insolent Language

**Specification 1:** On 19 May 2015, at 6:28 a.m. you utilized a government computer to send an e-mail to Joshua Bass, your immediate supervisor; Leonard Schilling, Deputy Public Works Officer NAVFAC NW, your third level supervisor; CDR Michael Leonard. Public Works Officer NAVFAC NW; CDR Michael Kenney, Executive Officer NAVFAV NW; CAPT Mark Geronime, Commander NAVFAC NW; RADM Katherine Gregory, Commander NAVFAC; Ray Mabus, Secretary of the Navy; ADM Jonathan Oreenert, CNO; and barackobama@mail.whitehouse.gov; copying John Andrews, your personal attorney; Hata Tomoyuki. OSC; Senator Murray; Kevin Evans, NAVFAC NW employee; Stephen Miller, IAM&AW Non-Professional Union Chairman; Ed O'Neil, (presumably) an aide in Senator Murray's office; Ray Kasper, Inspector General NAVFAC NW; info@whistleblower.org; and inspector.general@eeoc.gov, stating in part: ". . . NAVFAC NW egocentric management still appear (sic) to think you are all above the law, and the rules of protections in place for the Federal employee . . . I will also charge you, and all involved for harassment, intimidation, retaliation . . . and shall face severe legal charges, and all who received this email in the NAVFAC NW chain of Command for allowing these adverse acts to occur."

**Specification 2:** On 22 May 2015 at 7:24, you utilized a government computer to send an e-mail to Stephen Miller, IAM&AW Non-Professional Union Chairman; Lisa Ellingboe, Human Resources Specialist NAVFAC NW; Joshua Bass, your immediate supervisor; John Andrews your personal attorney; Jennifer Herbig, Director Human Resources NAVFAC NW; Leonard Schilling, Deputy Public Works Officer NAVFAC NW, your third level supervisor; CDR Michael Leonard, Public Works Officer NAVFAC NW; CDR Michael Kenney, Executive Officer NAVFAC NW; CAPT Mark Geronime, Commander NAVFAC NW; RADM Katherine Gregory,

Commander NAVFAC; Ray Mabus, Secretary of the Navy; barrackobama@mail.whitehouse.gov; inspector.general@eeoc.gov; info@mail.whitehouse.gov; Judy Conlow, OGC NAVFAC NW; Lisa Evans. OGC NAVFAC NW; Hata, Tomoyuki, OSC; stating in part; ". . . This is direct proof of Mr. Bass and all involved again are trying to set me up for another false adverse action to cover up their prohibited Personnel practices. I will not deal with intentional corrupt federal personnel . . . I have caught them intentionally violating so many Federal employees' rights. It shall come out in a Court room Venue."

**Specification 3:** On 08 June 2015 at 9:20 a.m., you utilized a government computer to send an e-mail to Joshua Bass, your supervisor; Leonard Schilling, Deputy Public Works Officer, your third level supervisor; CDR Michael Leonard, Public Works Officer NAVF AC NW; CDR Michael Kenney, Executive Officer NAVFAV NW; CAPT Mark Geronime, Commander NAVFAC NW; and RADM Katherine Gregory, Commander NAVFAC. You copied LCDR William (Ross) Pitcairn, your second level supervisor; John Andrews, your personal attorney; Stephen Miller, IAM&AW Non-Professional Union Chairman; Robert Westbrook, IAM&AW Business Manager; and Kevin Kirkpatrick, Deputy EEO NAVFAC NW; stating in part: ". . . It's not the job, in fact it's you Josh Bass . . . you and LCDR Pitcairn to include the whole NAVFAC NW command knowingly set me up, and violated my rights . . . With as much respect as I can provide, I am saddened to see what intentional mean people like you and this command abuse the rule of law by direct retaliation/intimidation."

**Specification 4:** On 25 June 2015 at 10:33 a.m., you utilized your government computer to send an e-mail to Joshua Bass, your supervisor and LCDR William (Ross) Pitcairn, your second level supervisor, stating in part: ". . . please communicate to *Mr. Ross pit corn* that I would not like another retaliatory adverse action without reasonableness, or consideration of my serious illness please." (Emphasis added).

**Specification 5:** On 06 July 2015 at 8:49 a.m., you utilized a government computer to send an e-mail to CAPT Mark Geronime, Commanding Officer NAVFAC NW, stating in part: ". . . so many times I have reached out for you to nip this in the bud per–say you ignored me, and continued to allow the disparate treatment to go on against me, and you again vicariously all this recidivist attack on my person both career, and character . . . any reasonable Commander, or person would at least meet me half way . . . Again any reasonable Boss/Company, and Command would go the extra mile to help an older disabled veteran. You and all NAVFAC NW

> Command to include Human resources, EEO, civilian management, and navy officers have intentionally degraded me . . . I am fully aware of the intent of NAVFAC NW, and how ever bi (sic) the disparate treatment, and corrupt cronyism goes is beyond my understanding . . . the fact that I stand up against your tyranny, and intentional abuse of authority to harm om own patriots is disgraceful, and liable . . . And I can't believe you sleep knowing your hurting your own people . . . Thank you again for at a minimum a response. Now I'm 100% sure of the disparate treatment is with premeditation, and intent to discredit a Veteran."
>
> **Specification 6:** On 05 August 2015, a meeting was held; in attendance were you; Lisa Ellingboe, Human Resources Advisor; George Karl, your witness; Steve Miller, IAM&AW Non–Professional Union Chairman; and your second level supervisor LCDR William (Ross) Pitcairn. During that meeting you referred to LCDR Pitcairn, as "Mr. Pit corn."

*Id.*

The proposed removal also provided that any response should be sent to the Deciding Official, Charles Monie, Acting Deputy Public Works Officer. On September 25, 2015, McEvoy responded arguing that the removal would violate his constitutional rights, other federal rights, and amounted to unlawful retaliation for his numerous EEO complaints. Dkt. 15-3 at 2–13.

On November 30, 2015, Mr. Monie issued his decision on the proposed removal. Mr. Monie concluded that the action should be sustained as proposed. Dkt. 13-7. In addition to his analysis of the factors to be considered when determining the appropriateness of a penalty, Mr. Monie commented that

> Mr. McEvoy's disrespectful conduct towards security personnel, reckless and disparaging public comments concerning the agency, disturbing comments concerning workplace violence, and his insolent and disrespectful language targeted at management have all adversely impacted the efficiency of the agency and warranted his removal from federal service.

*Id.* at 6. As a result, the Navy terminated McEvoy effective December 6, 2015. Dkt. 13-6 at 2.

McEvoy timely appealed the termination to the Merit Systems Protection Board ("MSPB"). On March 7 and 8, 2016, Administrative Law Judge Richard Slizeski held a hearing via videoconference. *Id.* On September 21, 2016, Judge Slizeski affirmed the action in a written decision. *Id.* Relevant to the instant complaint, Judge Slizeski considered McEvoy's claims that his termination was retaliation for his EEO complaint and concluded that McEvoy "failed to prove by preponderant evidence his affirmative defense of retaliation based on prior protected EEO activity." *Id.* at 42. Judge Slizeski ultimately concluded as follows:

> Preponderant evidence shows and I find that the deciding official considered the relevant factors and exercised his discretion within the tolerable limits of reasonableness. Under the circumstances, I cannot find that the agency's choice of penalty was so excessive as to be an abuse of discretion or that it exceeds the maximum reasonable penalty. Accordingly, I affirm the agency's action.

*Id.* at 51.

### III. DISCUSSION

Defendant moves for summary judgment on all of McEvoy's claims, and McEvoy moves for summary judgment on his claim for retaliation and discrimination. In his response, McEvoy concedes his reasonable accommodation claim and breach of contract claim. Dkt. 22 at 27–28.

Regarding Defendant's motions to strike McEvoy's untimely response and overlength brief, the Court agrees that both pleadings violate the local rules of procedure.

While an accidental mistake in calendaring the proper response date is excusable, the intentional decision to file a motion that is over twice the allowed length is not excusable. Upon review of the motion, however, the argument section is only sixteen pages. *See* Dkt. 15 at 36–53. The Court finds that reviewing this portion of the motion is not prejudicial. To the extent McEvoy takes issue with the Court not considering the other pages of his brief, any fact that is material to his position should have been specifically cited in his argument section. Therefore, the Court will consider McEvoy's untimely response and a portion of McEvoy's overlength motion.

Regarding McEvoy's first amendment and due process claims, Defendant argues that it is protected by sovereign immunity. Dkt. 12 at 12, 20. McEvoy contends that Judge Slizeski waived Defendant's immunity by stating that McEvoy "may file a civil action against the agency on both your discrimination claims and your other claims in an appropriate United States district court." Dkt. 22 at 11–12 (citing Dkt. 13-6 at 56). McEvoy has failed to show that this is an express waiver of sovereign immunity by the Navy, which "is a prerequisite for jurisdiction." *Clemente v. United States*, 766 F.2d 1358, 1363 (9th Cir. 1985). Therefore, the Court dismisses McEvoy's constitutional claims for lack of jurisdiction.

McEvoy's remaining claims are for retaliation and hostile work environment in violation of federal statutes. The Court will address the merits of these claims.

**A.  Summary Judgment Standard**

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material

fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt"). *See also* Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The Court must consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254; *T.W. Elec. Serv., Inc.*, 809 F.2d at 630. The Court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elec. Serv., Inc.*, 809 F.2d at 630 (relying on *Anderson*, 477 U.S. at 255). Conclusory,

nonspecific statements in affidavits are not sufficient, and missing facts will not be presumed. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990).

**B.     Retaliation**

To establish a prima facie claim of retaliation, a plaintiff must prove that (1) the plaintiff engaged in a protected activity, (2) the plaintiff suffered an adverse employment action, and (3) there was a causal link between the plaintiff's protected activity and the adverse employment action. *Villiarimo v. Aloha Is. Air, Inc.*, 281 F.3d 1054, 1064 (9th Cir. 2002) (Title VII); *Coons v. Sec'y of U.S. Dep't of Treasury*, 383 F.3d 879, 887 (9th Cir. 2004) (ADA). Under both Title VII and the ADA, "the standard for the 'causal link' is but-for causation." *T.B. ex rel. Brenneise v. San Diego Unified Sch. Dist.*, 806 F.3d 451, 473 (9th Cir. 2015). "This requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the [defendant]." *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 133 S.Ct. 2517, 2533 (2013); *see also Gallagher v. San Diego Unified Port Dist.*, 668 Fed. Appx. 786 (9th Cir. 2016) ("Gallagher's evidence does not show that retaliation was *the* cause of the non-renewal of his anchorage permit, as the but-for test requires."); *Brenneise*, 806 F.3d at 473 ("there were many plausible explanations why the district may have [committed the alleged adverse action]. Retaliation was not one of them.").

In this case, McEvoy identifies four adverse employment actions. First, McEvoy contends that Mr. Leonard placing the suspension notice on McEvoy's work chair in a red folder was an adverse employment action. Dkt. 22 at 14–15. Defendant contends that this act is not an adverse action. An action is adverse "if it is reasonably likely to

deter employees from engaging in protected activity." *Ray v. Henderson*, 217 F.3d 1234, 1243 (9th Cir. 2000). Other than McEvoy's self-serving argument that the placement of the notice was "a petulant message designed to warn McEvoy against filing any more EEO claims," Dkt. 22 at 15, McEvoy submits no evidence that such delivery of a notice would deter a reasonable employee from filing EEO complaints. In other words, if any harm resulted, the harm was at most merely "trivial," instead of "materially adverse." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) ("We speak of *material* adversity because we believe it is important to separate significant from trivial harms."). Moreover, McEvoy fails to submit any evidence that his prior activity was *the* cause of his new supervisor's decision to place the notice on McEvoy's chair in a red folder. *Gallagher*, 668 Fed. Appx. at 786. In light of these two failures, McEvoy fails to establish that any reasonable juror could conclude that Mr. Leonard's action supports a retaliation claim. Therefore, the Court grants Defendant's motion on McEvoy's retaliation claim on this basis.

Second, McEvoy asserts that the multiple investigations by his superiors were adverse actions. Dkt. 22 at 15–16. On this issue, McEvoy would have his cake and eat it as well. McEvoy personally sent emails and supported at least one letter to Senator Murray containing allegations of unlawful discrimination and retaliation in the workplace and then, when his supervisors conducted investigations into the allegations, he alleges that the investigations are retaliatory. At the very least, he has failed to show that EEO activity was the but-for cause of the investigations when he personally requested additional investigations in the workplace. He also fails to show that any investigation

concerning his EEO complaints was adverse as opposed to an attempt to substantiate his own allegations. Therefore, the Court grants Defendant's motion on McEvoy's retaliation claim on this basis because McEvoy fails to establish that any reasonable juror could conclude that Defendant's investigations were retaliatory.

Third, McEvoy asserts that Bass's June 8, 2015 letter of caution was an adverse employment action. Dkt. 22 at 16–17. Defendants contend that McEvoy fails to establish a causal connection because McEvoy did not file an EEO complaint against Bass until June 29, 2015. Dkt. 12 at 18–19. McEvoy responds that the action was still retaliation because other employees had previously engaged in the protective activity of filing EEO complaints against Bass. Dkt. 22 at 17. In other words, McEvoy implicitly concedes that there is no but-for causation between any of his protective activity and an adverse action by Defendant. Therefore, the Court grants Defendant's motion on McEvoy's retaliation claim on this basis.

Finally, McEvoy asserts that his termination was a retaliatory adverse employment action. Dkt. 22 at 17–24. While the Court agrees with McEvoy that termination is an adverse action, he fails to show that his EEO complaint was the but-for cause of the termination. The record is replete with findings and conclusions by independent decision makers that the termination was because of McEvoy's own actions. Even under the more liberal "motivating factor" test, Judge Slizeski found that McEvoy had failed to prove retaliation was a factor for the termination. Now, under the higher burden of but-for causation, McEvoy also fails to establish a prima facie case of termination because of

retaliation.[1] In other words, there exists many plausible reasons for McEvoy's termination, and "[r]etaliation is not one of them." *Brenneise*, 806 F.3d at 473. Therefore, the Court grants Defendant's motion on McEvoy's retaliation claims because no reasonable juror would find for McEvoy.

**C.  Hostile Work Environment**

To prove that a hostile work environment existed, a plaintiff must show that: (1) he was subjected harassment, (2) this conduct was unwelcome, and (3) the conduct was "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Fuller v. City of Oakland, Cal.*, 47 F.3d 1522, 1527 (9th Cir. 1995), *as amended* (Apr. 24, 1995).

In this case, McEvoy asserts that he was subjected to a hostile work environment because Bass kept a supervisor's journal and kept McEvoy under a heightened level of scrutiny. Dkt. 22 at 15. Defendant argues that McEvoy's claim fails because McEvoy has failed to show any conduct that is "both objectively and subjectively offensive." Dkt. 12 at 16 (citing *Ray v. Henderson*, 217 F.3d 1234, 1245 (9th Cir. 2000)). The Court agrees. McEvoy fails to show that keeping a journal of interactions with an employee is offensive in any manner. Moreover, McEvoy has failed to show that receiving one letter of reprimand is severe and pervasive conduct that alters the conditions of his employment. Therefore, the Court grants Defendant's motion on McEvoy's hostile work environment claim.

---

[1] McEvoy's response is based on the motivating factor test. *See* Dkt. 22 at 17.

## IV. ORDER

Therefore, it is hereby **ORDERED** that Defendant's motion for summary judgment (Dkt. 12) is **GRANTED** and McEvoy's motion for partial summary judgment (Dkt. 15) is **DENIED**. The Clerk is directed to enter **JUDGMENT** for Defendant and close this case.

Dated this 20th day of February, 2018.

BENJAMIN H. SETTLE
United States District Judge